J-A28034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOUGLAS MARSHALL | |
| Appellant | No. 2702 EDA 2013 |

Appeal from the Judgment of Sentence June 14, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001935-1999

BEFORE: GANTMAN, P.J., PANELLA, J., and WECHT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 24, 2014**

Appellant, Douglas Marshall, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following revocation of his probation. We vacate and remand.

The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

> This case stems from an incident that occurred on June 18, 1999, at 1:46 p.m., when two Chester Police Officers, Stanfield and Lee, responded to the area of Front and Norris Streets in Chester, Pennsylvania, in response to a complaint of illegal dumping. Upon arrival, the two Officers observed a man, who identified himself as Appellant, operating a white Ford pick-up. The two Officers observed tree limbs, brush, and other debris in the bed of the pick-up.
>
> After being advised through police radio that the vehicle was stolen and…Appellant's license was suspended, Officer Lee went to the passenger-side door while Officer Stanfield

went to the driver's-side door. Also on the scene were three other officers, Studzinski, Michael, and De la Cruz, who were at the location as back-up. Officer Stanfield opened the driver's-side door, while Officer Lee opened the passenger-side door and asked…Appellant to exit the vehicle. Instead of complying with the Officer's requests, …Appellant reached down to put on his boot, started the truck, put it in reverse, and accelerated the vehicle at a high rate of speed.

Both Officers Stanfield and Lee were struck by the vehicle's open doors. The truck ran over Officer Stanfield while dragging Officer Lee for approximately 50 yards. Officer Lee became dislodged from the vehicle as it struck an electrical pole, resulting in an explosion. The two injured Officers were in the street lying in the path of the pick-up. Officers [Studzinski], Michael, and De la Cruz were facing Appellant's vehicle, ordered him to stop, but he ignored the order and drove at the Officers. Then, Officers [Studzinski] and De la Cruz began to shoot at the pick-up truck.

A bystander, who was observing the incident, attempted to use his truck to block the pick-up from escaping but the pick-up was able to get around the blocking vehicle. The pick-up finally collided with Officer Pompilli's vehicle, who was responding to an assist officer call. Both vehicles were disabled and…Appellant was arrested at the scene. Officer Stanfield was admitted to the hospital in critical condition and Officer Lee was admitted in guarded condition. [Officers] De la Cruz and Pompilli were treated and released.

\* \* \*

…Appellant was charged with six counts of "Aggravated Assault." Thereafter, on May 17, 2000, …Appellant entered an open guilty plea to…Aggravated Assault, six Counts. On June 27, 2000, the Trial Judge sentenced…Appellant on each of the Six Counts as follows:

\* \* \*

forty-eight (48) to ninety-six …(96) months SCI for

- 2 -

Counts 1, 2, and 4 to run concurrent with sixty-six (66) to one hundred thirty-two (132) months SCI for Counts 3, 5, and 6. All sentences (counts) run concurrent to one another. Additionally, …Appellant was sentenced on each count to 5 years of probation to run concurrent with each other and consecutive to the incarceration.

In 2012, …Appellant was convicted of a new case in Philadelphia, Pennsylvania with facts strikingly similar to the [original] case. The facts in the Philadelphia case are as follows: on January [21], 2012, the Philadelphia police set up surveillance near 28 North Bodine for narcotics activity. The police observed the occupants of a Burgundy Chevy engage in a drug transaction and tried to stop the car. …Appellant was the driver of the vehicle. …Appellant ignored the police efforts to stop the vehicle. As Appellant's vehicle sped off, it hit numerous parked cars, and drove toward police and pedestrians on the street. There were shots fired from the vehicle and the police returned fire. …Appellant fled from the police, hid from police, but eventually turned himself into the FBI once they found his location in a hotel room.

This subsequent conviction was a violation of …Appellant's parole. On June 14, 2013, after a ***Gagnon II*** hearing, the Trial Judge resentenced…Appellant on each of the Six Counts as follows:

4 to 10 years SCI. All counts were to run concurrent to each other but consecutive to the new Philadelphia conviction. Also, …Appellant's probation was revoked.

On July 11, 2013, …Appellant filed a timely *pro se* Notice of Appeal. On July 17, 2013, the trial court entered a Scheduling Order relative to the appeal. On August 2, 2013, counsel for…Appellant, …of the Delaware County Public Defender's Office, filed a "Petition for Extension of Time to File Statement of Errors Complained of on Appeal." On November 18, 2013, [counsel] filed a conflict petition alleging a conflict of interest that appeared in Appellant's *pro se* [Pa.R.A.P. 1925(b)] statement. This necessitated the appointment of new counsel. On December 26, 2013,

- 3 -

the Trial Judge entered an Order appointing [new] counsel for…Appellant. On January 17, 2014, a Motion to Extend the Time to File a Statement of Errors Complained of on Appeal was filed and later granted. On January 21, 2014, the undersigned was assigned this case. On March 11, 2014, [new counsel] filed a "[Rule] 1925(b) Statement on Appeal."

(Trial Court Opinion, filed April 25, 2014, at 1-4) (internal footnotes and citations to record omitted).

Appellant raises the following issue for our review:

DID THE…COURT ERR IN SENTENCING APPELLANT TO FOUR (4) TO TEN (10) YEARS AFTER FINDING APPELLANT VIOLATED HIS PROBATION WHEN THE ORIGINAL SENTENCE CONTAINED A SENTENCE OF FIVE AND A HALF (5½) TO ELEVEN (11) YEARS FOR THE CRIME OF AGGRAVATED ASSAULT MAKING THE MAXIMUM SENTENCE TWENTY-ONE YEARS OR ONE YEAR OVER THE STATUTORY MAXIMUM.

(Appellant's Brief at 5).

Appellant argues his revocation sentence of four (4) to ten (10) years' imprisonment is illegal because it exceeds the maximum sentence for aggravated assault when combined with Appellant's original sentence of five and one-half (5½) to eleven (11) years' imprisonment. Appellant claims the maximum sentence for aggravated assault, a first degree felony, is twenty (20) years' imprisonment. Appellant alleges his aggregate maximum sentence is now twenty-one (21) years' imprisonment, which is one (1) year over the statutory maximum for aggravated assault. Appellant concludes this Court should vacate his revocation sentence and remand for a new sentencing hearing. For the following reasons, we vacate and remand.

When reviewing the outcome of a probation revocation proceeding, our scope of review includes the validity of the proceeding, the legality of the sentence imposed, and when properly preserved, the discretionary aspects of sentencing. ***Commonwealth v. Cartrette***, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*). "In general, the imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." ***Commonwealth v. Hoover***, 909 A.2d 321, 322 (Pa.Super. 2006). A sentence should not be disturbed where it is evident the court was aware of the appropriate sentencing considerations and weighed them in a meaningful fashion. ***Commonwealth v. Fish***, 752 A.2d 921, 923 (Pa.Super. 2000).

The Sentencing Guidelines do not apply to sentences imposed following revocation of probation. ***Commonwealth v. Ferguson***, 893 A.2d 735, 739 (Pa.Super. 2006), *appeal denied*, 588 Pa. 788, 906 A.2d 1196 (2006). "[U]pon sentencing following a revocation of probation, the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence." ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 792 (Pa.Super. 2001). A court can sentence a defendant to total confinement after revoking probation if the defendant was convicted of another crime, the defendant's conduct indicates that it is likely that he will commit another crime if he is not imprisoned, or such a sentence

is essential to vindicate the court's authority. ***Commonwealth v. Crump***, 995 A.2d 1280 (Pa.Super. 2010), *appeal denied*, 608 Pa. 661, 13 A.3d 475 (2010).

Credit for time served is governed by statute in relevant part as follows:

> **§ 9760.  Credit for time served**
>
> After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:
>
> (1)  Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based.  Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1).

> [A] defendant shall be given credit for any days spent in custody prior to the imposition of sentence, but only if such commitment is on the offense for which sentence is imposed.  In the context of sentencing after probation revocation, the court must give due consideration to the time the defendant has spent serving probation, **but the court is not required to credit the defendant with any time spent on probation**.  Likewise, the defendant **is not automatically granted credit for time served while incarcerated on the original sentence unless the court imposes a new sentence that would result in the defendant serving time in excess of the statutory maximum**.

***Commonwealth v. Infante***, 63 A.3d 358, 367 (Pa.Super. 2013) (emphasis added) (internal citations and quotation marks omitted).  Thus, in

- 6 -

sentencing upon revocation of probation, the court must consider the time the defendant has already spent imprisoned if "the failure to award credit for the original time spent imprisoned would result in the defendant serving more time incarcerated than the lawful maximum." *Crump, supra* at 1285. "As long as the new sentence imposed does not exceed the statutory maximum when factoring in the incarcerated time already served, the sentence is not illegal." *Id.* (citing *Commonwealth v. Williams*, 662 A.2d 658 (Pa.Super. 1995)).

Instantly, the record suggests Appellant did not serve the entire eleven-year maximum in prison on his original sentence. Instead, the record suggests Appellant was paroled and re-committed on several occasions. Thus, the record is unclear as to how much time Appellant actually served in prison on his original sentence of five and one-half to eleven years. If Appellant served **more** than ten years' imprisonment on his original sentence, then his probation revocation sentence of four to ten years' imprisonment is illegal as it causes Appellant's aggregate sentence for aggravated assault to exceed the statutory maximum of twenty years. *See Infante, supra*; *Crump, supra*. If Appellant served **less** than ten years in prison on his original sentence, then his new sentence is legal. *See id.* Therefore, on remand the trial court must determine exactly how much time Appellant has already served in prison on his original sentence and then assess whether that time plus the revocation sentence would exceed the

statutory maximum. In resolving this problem, however, the court is not required to give Appellant any credit for time served on parole or probation. Accordingly, we vacate the judgment of sentence in this case and remand for re-sentencing.

Judgment of sentence vacated; case remanded. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014